UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WANDALYN M. JULIAN                                      CIVIL ACTION

VERSUS                                                 NO. 06-2809

JO ANNE B. BARNHART,                                   SECTION "R" (2)
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION


**<u>FINDINGS AND RECOMMENDATIONS</u>**

Plaintiff, Wandalyn M. Julian, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. §§ 405(g), 4232.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

As ordered, Record Doc. No. 10, plaintiff filed a memorandum of facts and law, which included exhibits that are not in the administrative record.  Record Doc. No. 11. Defendant filed a timely reply memorandum.  Record Doc. No. 14.

In addition, plaintiff filed a motion to add medical records.  Record Doc. No. 12. The court deferred ruling on that motion and ordered the Commissioner to address it in her reply memorandum.  Record Doc. No. 13.

I.   PROCEDURAL HISTORY

Julian filed an application for DIB on October 9, 2002, alleging disability since June 2, 2001 because of asthma and pain and numbness in her left arm following an elbow fracture.  (Tr. 25, 30).  After her application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), who rendered an unfavorable decision on November 25, 2003.  Julian requested review by the Appeals Council.  On August 20, 2004, the Appeals Council granted the request on grounds that the administrative record was incomplete because the hearing tape could not be located, and remanded the matter to the ALJ for a new hearing and any further action necessary to complete the record.  (Tr. 119-20).

Another hearing was held on June 20, 2005.  On January 27, 2006, the ALJ denied plaintiff's application.  (Tr. 13-18).  After the Appeals Council denied review on April 14, 2006 (Tr. 4-6), the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.

II.   <u>STATEMENT OF ISSUES ON APPEAL</u>

Plaintiff contends that the ALJ made the following errors:

A.   The ALJ failed to consider plaintiff's additional injuries and continuing persistent pain, which are severe impairments that meet the listings.

B.   The ALJ erred by failing to consider plaintiff's depression.

C.   The ALJ erred by failing to find that plaintiff is disabled so that she cannot perform her past relevant work or work existing in significant numbers in the national economy.

III.   <u>ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL</u>

The ALJ made the following relevant findings:

1.   Plaintiff's bilateral carpal tunnel syndrome, status post trauma to her left elbow, and asthma are severe impairments, which do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

2.   Julian's allegations regarding her symptoms and limitations are not totally credible and neither her assertions nor the medical evidence support a disabling level of impairment.

3.   Plaintiff has the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently and to sit, stand and/or walk for six hours out of an eight-hour work day, but must avoid climbing and dust, fumes, smoke or noxious gases.  She also has reduced ability to lift only 10 pounds with her left arm and has limited reaching ability in all directions with that arm.

4.      She has the residual functional capacity to return to her past relevant work as a retail sales clerk.

(Tr. 16-18).

IV.    ANALYSIS

A.      Plaintiff's Motion to Add Medical Records

Julian seeks to introduce into the record medical evidence that is dated both before and after the ALJ's decision was rendered on January 27, 2006. Record Doc. No. 12. The Commissioner opposes the motion. Record Doc. No. 14.

For the following reasons, IT IS RECOMMENDED that plaintiff's motion to add medical records be DENIED. Julian has not even argued, much less shown, that the evidence is new and material and that good cause exists for her failure to incorporate it into the administrative record.

This court may not issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995); Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989).

The court may only remand for consideration of new evidence upon a showing that the evidence is new and material and that good cause exists for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g);

4

Leggett v. Chater, 67 F.3d 558, 567 (5th Cir. 1995). "In addition, the new evidence must also pertain to the contested time period and not merely concern a subsequently acquired disability or the deterioration of a condition that was not previously disabling." Id.

"New evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied, and whether there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003).

As to the medical records that postdate the ALJ's decision in the instant case, a medical examination conducted after the ALJ's decision "alone is not sufficient to warrant a remand." Leggett, 67 F.3d at 567. Here, as in Leggett, Julian

> does not provide a satisfactory explanation for [the absence of the evidence] from the initial proceedings. The evidence consists of a new examination taken far outside of the period in which [plaintiff] applied for or was denied benefits. [Plaintiff] offers no evidence that [her] current . . . disability did not subsequently develop after [her] initial application or that it is not the result of the deterioration of a condition that was not previously disabling.

Id.

Julian also seeks to introduce additional evidence from the relevant time period, but she offers no explanation for her failure to submit that evidence during the very lengthy administrative proceedings, which began in October 2002 and were not

5

concluded until January 2006.  Nor did she attempt to submit the evidence to the Appeals Council before it denied review on April 14, 2006.

Finally, Julian has not demonstrated a reasonable probability that the new evidence would change the outcome of the Commissioner's decision, which applies only to the period of June 2, 2001 (her alleged disability onset date) through January 27, 2006, the date of the ALJ's decision.  Even as to the evidence of medical treatment during that time period, plaintiff offers neither an explanation of its relevance nor any argument to show that any of it might change the outcome of the decision.

> B.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 389 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Loza, 219 F.3d at 393; Spellman, 1 F.3d at 360.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the

Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2005). The regulations include a five-step evaluation process for determining whether

an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett, 67 F.3d at 564.

The claimant has the burden of proof under the first four parts of the inquiry. Newton, 209 F.3d at 453.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history."  Martinez, 64 F.3d at 174.

C.    Factual Background

Plaintiff appeared pro se at the hearing and confirmed that she waived her right to representation.  (Tr. 191-92).  Before she was sworn to testify, she stated that her doctors had recommended that she have surgery.  (Tr. 199).

Julian testified that she was 51 years old and had completed the twelfth grade. (Tr. 202-03).  She said she had also been trained as a court advocate for children and had recently completed training at the Therabaum [phonetic] College or Institution for "doing therapy the Bible way."  She said she had been certified but not yet licensed for this type of therapy.  (Tr. 203-04).

Plaintiff stated that she had worked in retail sales at Beauty Mart from 1990 to 1995.  She said the job involved standing for 6 hours per day and lifting cases of beauty products weighing no more than 15 pounds.  (Tr. 205-06).  She testified that she did some stocking, operated a cash register and waited on customers.

Julian testified that she worked as a cook for Zara's Store from July 1995 to June 2001 and had not worked since then.  She said she stood and walked for eight to nine hours per day in that job.  She stated that she had no special training to learn to cook.  She said that she lifted up to 60 pounds occasionally and 15 to 30 pounds frequently in that job.  (Tr. 206-08).

Plaintiff said that she is married and that her husband works to support them.  She stated that they live in a one-story house with three bedrooms and one bathroom.  (Tr. 209-10).  She testified that they eat out a lot but that sometimes she cooks small portions of things, like grits, mostly in the microwave.  She said she tries to do some household chores, like washing glasses, folding laundry and sweeping by putting a rag on the floor and moving it around with her feet.  She stated that she cannot do too much sweeping and does no vacuuming because the dust bothers her sinuses.  She said that her husband lifts the heavy things.  (Tr. 210-11).  She testified that she occasionally cleans the bathroom but that her husband does it most of the time.

Plaintiff said that she can barely take care of her own hygiene.  She said she has fallen several times in the bathtub and she can barely wipe herself after using the toilet.  She stated that she gets panic attacks because she is used to being able to do things on her own.  She said she drives, shops for groceries and goes out to eat with her husband.  (Tr. 211).  She testified that she goes to church on Sundays and to a prayer service

followed by Bible study class on Wednesday nights.  She said she teaches Sunday school once or twice a month, mostly for adults but sometimes for teenagers.  (Tr. 212-13).

Julian testified that she tries to lift most things with her right hand because her left hand lets things fall unexpectedly.  (Tr. 213).  She said she can lift 10 to 11 pounds with both hands, but she cannot lift bulky things even if they are not heavy.  She stated that she can stand without pain for about one to one and one-half hours, then has to sit for a while before she can stand again.  She said she can sit for about one hour without being agitated.  She testified that she mostly lies down.  She said she can walk about two and one-half hours before it becomes too painful and she needs to sit down.  She stated that she tries to exercise her hands.  (Tr. 214).

Plaintiff said she takes Nifedical for high blood pressure; Zyrtec, Allegra and Flonase for her sinuses; Albuterol for asthma; and Advil.  (Tr. 215).  She explained that Nifedical is the only medication that she takes every day and that she takes the others as needed.  She stated that she sees her primary physician, Dr. Mark Holdiness, every three to six months and sees her gynecologist once a year.  (Tr. 216-17).  She said she sees Dr. Creely occasionally for her sinuses whenever she has a flare-up.  She recalled seeing him two or three times the previous year for a sinus infection.

Julian testified that she saw the neurologist, Dr. Wilensky, three times to evaluate her arm.  She said he told her that her nerve cells were very damaged, she needed surgery

11

and he wanted to schedule her for surgery, but she was afraid to have it.  (Tr. 217).  She testified that he told her to wear a brace to keep the pain down.  She said she has spasms going up and down her left arm, even though her cracked elbow has healed.

Plaintiff stated that the tests revealed that her carpal tunnel syndrome was worse on the left than the right.  She said she tries to use her right hand more and she has tried to train that hand to do everything.  However, she stated that she gets upset and has panic attacks because she cannot use her left hand, which is her dominant hand.  She said she can carry things in her right hand but that she cannot do things like comb and style her hair with that hand, or eat the way she would like so she does not look like she is "ill-formed." (Tr. 218-19).

Julian testified that she has not scheduled any surgery.  She said she had made an appointment with a neurologist, Dr. Fleming at Pontchartrain Bone and Joint Clinic in March 2003, but that the doctor would not see her when she arrived for the appointment.  She said the Clinic denied her appointment because her worker's compensation insurer would not pay for it.  She testified that she offered to pay for the visit herself because she was in so much pain, but that the Clinic would not accept that.  She stated that she made the appointment on her own, not as a referral by her worker's compensation carrier, because she was then and still is awakened six to eight times per night by pain and wanted to see if she could get any medication to stop the pain.

12

Plaintiff testified that she was depressed and in pain after Dr. Fleming refused to see her and that she just "shut down," which explains the lapse of time in her treatment records. She said she found Dr. Wilensky in October 2004, but has not been back to see him since then. (Tr. 219-21). She stated that she was afraid because she had seen people who had had surgery when she went to therapy. She said she had seen one man there and "you could hear his bones," and she did not want her hands to end up like that. (Tr. 220-21). She said that she had had a hysterectomy, which caused her to be more nervous and produce extra urine.

Plaintiff said she had not seen any doctor for depression because "they don't understand. They don't see, when you don't see things it's hard for people to understand when you're trying to explain what you're going through." (Tr. 222).

Julian testified that she had last seen her gynecologist, Dr. Jacobs, the previous year. She stated that she had been going through menopause and she could not take any of the medications he prescribed for her because they gave her stomach problems. She said that she goes to the bathroom more often since her hysterectomy on November 18, 2004, and that it is embarrassing. (Tr. 241).

D.    <u>Vocational Expert Testimony</u>

A vocational expert, Douglas Kuylen, testified that Julian's past work as a restaurant cook was listed as heavy and medium exertional level, with an SVP skill level

of 7,[2] but that plaintiff's testimony established that she performed it in the heavy range. He said that plaintiff's past sales job was light exertional work, with an SVP skill level of 3.  (Tr. 222-23).  Kuylen stated that a light job involves lifting and carrying up to 20 pounds and walking for two to six hours per day.  He explained that an SVP skill level of 7 means that it would take two to four years to become proficient as a cook, while SVP skill level of 3 means anywhere from seven days to three months to learn the job.

The ALJ posed a hypothetical of a claimant with plaintiff's education and prior work experience who is left-handed and can perform light work.  Specifically, she could lift and carry 10 pounds frequently and 20 pounds occasionally; sit with normal breaks

---

[2]"SVP" stands for Specific Vocational Preparation, which

is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.
. . . .
The following is an explanation of the various levels of specific vocational preparation:

| Level | Time |
|---|---|
| 1 | Short demonstration only |
| 2 | Anything beyond short demonstration up to and including 1 month |
| 3 | Over 1 month up to and including 3 months |
| 4 | Over 3 months up to and including 6 months |
| 5 | Over 6 months up to and including 1 year |
| 6 | Over 1 year up to and including 2 years |
| 7 | Over 2 years up to and including 4 years |
| 8 | Over 4 years up to and including 10 years |
| 9 | Over 10 years |

Dictionary of Occupational Titles App. C, ¶ II (4th ed. rev. 1991), avail. at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

14

for at least 6 out of 8 hours; stand and walk with normal breaks for at least 6 out of 8 hours; has limited ability to push, pull and reach in all directions, including overhead, with the upper extremities; can push and pull no more than 10 pounds with the left arm; can use her left arm to assist the right in lifting and carrying; and can never climb ladders, scaffolds or ropes.  (Tr. 225-26).

The vocational expert testified that such a claimant could not perform Julian's past relevant work as a cook but she could perform plaintiff's past relevant work of retail sales clerk.  He testified that plaintiff's cooking skills would not be transferable but that she could use her retail sales skills at available retail sales jobs.

The ALJ proposed a second hypothetical of the same individual with the additional restriction of no exposure to concentrated dust, fumes, smoke, chemicals and noxious gases.  Kuylen stated that both light and sedentary jobs would be available to such a claimant.  (Tr. 226).  He said the number of available retail sales jobs would be reduced by about five percent to account for the additional restriction.

Kuylen testified that there are more than 2,500 light duty, retail sales jobs available in Louisiana.  He also stated that unskilled sedentary and light jobs were available, such as bookkeeping, accounting and auditing clerk; eligibility interviewers; receptionist and information clerk; stock clerk and order filler; and general office clerk,

all of which are available in significant numbers in Louisiana and the national economy. (Tr. 227-30).

At plaintiff's request, the ALJ asked the vocational expert to consider additionally that the claimant's left hand intermittently gives out and drops whatever the hand is holding, and that her left hand begins to hurt after a while when the hand is held down by the body when she is walking, but the pain is relieved by holding the hand up to her chest.  (Tr. 230-31).  Plaintiff clarified that, when her left hand gives out intermittently and she is unable to grasp anything with that hand, it might stay in that condition for 15 to 30 minutes.  (Tr. 232-34).  She stated that this happens three to four times a week in the morning and two to four times a week in the afternoon.  (Tr. 234-35).

The ALJ incorporated these limitations into another hypothetical.  Kuylen testified that the limitations would not cause any change in the claimant's ability to work as a retail sales person, a receptionist and information clerk, or a stock clerk and order filler. He stated that the additional restrictions would eliminate the positions of bookkeeping, accounting and auditing clerk and general office clerk, and would reduce the number of available sedentary and light receptionist or interviewer jobs by about 25 percent.  He said that he has seen one-armed persons work as order fillers, such as packaging hams. The vocational expert explained that it would be feasible for plaintiff to work at such a job if her dominant, left arm could be used to assist her non-dominant, right arm.  He

noted that, while a person may be unable to write for 15 minutes, she might be able to do so in the next 15 minutes.  He also explained that even a numb hand may be used as long as the person can see what the hand is doing.  (Tr. 236-38).

Finally, the ALJ asked, at plaintiff's request, the effect of an additional restriction that the pain from spasms in her arm was so debilitating that the claimant could not concentrate, focus and perform a job.  The vocational expert testified that such a claimant would not be able to work at any job.  (Tr. 239).

E.      Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 15-16).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

F.      Plaintiff's Appeal

1.      *The ALJ did not err by failing to consider plaintiff's additional injuries and continuing persistent pain.*

The ALJ found at the second step of the sequential evaluation process that Julian has severe impairments consisting of bilateral carpal tunnel syndrome, status post trauma to her left elbow, and asthma.  The ALJ found at the third step that none of plaintiff's impairments meet or medically equal one of the listed impairments in Appendix 1,

17

Subpart P, Regulation No. 4.  At the fourth step, the ALJ found that plaintiff has the residual functional capacity to perform her past relevant work as a retail sales clerk. Julian argues that the ALJ erred by failing to consider her additional impairments and persistent pain, which she contends are severe impairments that meet the listings.

Plaintiff has the burden from the first through the fourth steps of the sequential analysis of proving her disability with sufficient medical evidence.  <u>Newton</u>, 209 F.3d at 453; <u>Wren v. Sullivan</u>, 925 F.2d 123, 128 (5th Cir. 1991).  In the instant case, there is not substantial, objective, medical evidence in the record that Julian suffers any severe impairments beyond those that the ALJ found.

First, all but one of the medical records that plaintiff cites in her memorandum in support of this argument post-date the ALJ's decision and are not in the record.  As discussed above, her motion to add this new evidence should be denied.  If Julian's formerly non-disabling impairments have worsened since the ALJ's decision so that she has become disabled, she can file another application for benefits.

Second, having found no additional severe impairments, the ALJ was not required to determine whether any of those non-severe impairments met or equaled a listing because the listings, by definition, describe only severe impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

18

Third, plaintiff has not pointed to any specific evidence in the record to support her contention that she meets the requirements of any of the numerous listings that she merely mentions in her memorandum.

> For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . .  For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.

Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990) (footnotes and citations omitted) (emphasis in original); accord Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990). Again, it is the plaintiff's burden to prove that she meets a listing, but she has not identified substantial medical evidence to do so.

Finally, the ALJ considered plaintiff's complaints of pain and other limitations and found that her allegations regarding her symptoms and limitations were not totally credible and were not substantially supported by the medical evidence. The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and her evaluation is entitled to considerable deference by this court.  Falco v. Shalala, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).  The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required.  James J. Flanagan Stevedores, Inc. v.

19

Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000); Falco, 27 F.3d at 163-64; Godbolt

v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.).

A claimant's own reports of her symptoms, including pain, fatigue and dizziness,

are insufficient to establish a medical impairment.  Subjective complaints like these must

be corroborated, at least in part, by objective medical evidence.  20 C.F.R. §§

404.1528(a), 416.928(a), 404.1529(a), 416.929(a); Palomo v. Barnhart, No. 05-50722,

154 Fed. Appx. 426, 430 (5th Cir. 2005) (citing Wren, 925 F.3d at 128-29); Craig v.

Chater, 76 F.3d 585, 592 (4th Cir. 1996); Houston v. Sullivan, 895 F.2d 1012, 1016 (5th

Cir. 1989).

> Whether pain is disabling is an issue for the ALJ, who has the primary
> responsibility for resolving conflicts in the evidence.  It is within the ALJ's
> discretion to determine the disabling nature of a claimant's pain, and the
> ALJ's determination is entitled to considerable deference.  The
> determination whether an applicant is able to work despite some pain is
> within the province of the administrative agency and should be upheld if
> supported by substantial evidence.  Moreover, pain must be constant,
> unremitting, and wholly unresponsive to therapeutic treatment to be
> disabling.  Subjective complaints of pain must also be corroborated by
> objective medical evidence.

Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted).

The ALJ explained in the instant case that the medical evidence did not confirm

the presence of a debilitating condition.  Substantial medical evidence supports that

conclusion.

20

Jeffrey Sketchler, M.D., examined plaintiff on March 5, 2003.  She complained of tingling and numbness in her left hand, which was gradually interfering with her activities of daily living and causing her difficulty in holding on to objects and frequent discomfort.  Dr. Sketchler found that plaintiff had nearly full range of motion in the left elbow and some tenderness in the left elbow area.  After viewing x-rays of the elbow, he diagnosed a slight amount of post-traumatic arthritis in the left elbow joint, but opined that plaintiff's symptoms were more consistent with ulnar nerve impingement or entrapment.  He referred Julian to Dr. Fleming for electromyelogram ("EMG"), nerve conduction studies and further evaluation.  (Tr. 103A).  Although Dr. Sketchler's consultation order appears in the record (Tr. 154), plaintiff testified that Dr. Fleming refused to see her.  There is no record that plaintiff was ever seen by Dr. Fleming.

Plaintiff underwent a consultative examination on July 8, 2003 by Mary Mathai, M.D., who is board certified in physical medicine and rehabilitation and in electrodiagnostic medicine.  During that examination, plaintiff denied any pain in her lower extremities, neck or back, but complained of spasms, intermittent pain and numbness in her left arm and weakness in her left hand.  She was being treated for hypertension by Dr. Holdiness.  (Tr. 94).  She said she was independent in her self-care, she washed dishes and clothes, and she drove herself to the medical appointment.  She said she could walk for 3 blocks, sit for 90 minutes and stand for 60 minutes without

21

problems.  Dr. Mathai noted that Julian was able to rise from a chair, dress and undress and get up on the examination table without assistance or visible problems.  Plaintiff's physical examination was normal, except that she had breakaway weakness and a positive Tinel's sign[3] in her left wrist.  (Tr. 95).  X-rays of her left elbow showed mild degenerative changes.

Dr. Mathai diagnosed left elbow pain and spasm with history of trauma to the elbow on June 2, 2001, and x-ray evidence of mild degenerative changes, severe hypertension, asthma on medication, and obesity.  Dr. Mathai opined that plaintiff could not engage in any work involving heavy lifting, carrying, pulling or pushing with her left arm, but that she could do light work in places that would not aggravate her asthma. (Tr. 96).

In a Medical Source Statement of Ability to Do Work-Related Activities (Physical) completed on July 8, 2003, Dr. Mathai stated that Julian could lift 20 pounds occasionally and 10 pounds frequently with her left arm, but that she had limited capacity for pulling and pushing with that arm.  Dr. Mathai opined that plaintiff's sitting, walking and standing were not affected.  (Tr. 98-101).

---

[3]Tinel's sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve.  It indicates a partial lesion or the beginning regeneration of the nerve." Dorland's Illustrated Medical Dictionary at 1644 (29th ed. 2000).  The sign is helpful in identifying the site of local nerve damage when diagnosing peripheral neuropathies, such as carpal tunnel syndrome.  The Merck Manual of Diagnosis and Therapy 1519-20 (16th ed. 1992).

On October 21, 2004, plaintiff had nerve conduction studies of both arms and an EMG of the left arm performed by neurologist, Michael Wilensky, M.D., on a referral from Dr. Holdiness.  Dr. Wilensky reported that the EMG was normal.  Based on the nerve studies, his impression was moderate to severe bilateral carpal tunnel syndrome, greater on the left than the right.   (Tr. 157-58).

Julian saw Dr. Wilensky on October 25, 2004.  Plaintiff told him that her hand symptoms had started to get worse in June 2004.  She complained that she woke up at night, could not wipe herself or fix her hair and had spasms into her hand.  She told him she had worn a splint for a few days and the splint had helped.  His physical examination revealed median weakness and decreased sensation.  Dr. Wilensky diagnosed bilateral carpal tunnel syndrome.  He noted that plaintiff wanted to continue to wear a splint and did not want surgery.  He asked her to return in one month.  (Tr. 155-56).

There are no further medical records in the administrative record after October 25, 2004, except a record of one visit to Dr. Holdiness on April 1, 2005 for a check of plaintiff's hypertension and refill of her medications.  (Tr. 144).

Plaintiff testified that she uses Advil, an over-the-counter pain medication, and she does not take it every day, but only as needed.  (Tr. 215).  She also testified, and the medical records reflect, that she has refused to have the recommended surgery for her carpal tunnel syndrome.  A claimant's lack of need for prescription medication or failure

23

to seek treatment are relevant factors to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Doss v. Barnhart, 137 Fed. Appx. 689, 2005 WL 1463178, at *1 (5th Cir. June 21, 2005); Anthony v. Sullivan, 954 F.2d 289,  295 (5th Cir. 1992); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa, 895 F.2d at 1024.

No doctor except Dr. Mathai placed any restrictions on plaintiff's ability to work and the ALJ accepted Dr. Mathai's restrictions in assessing Julian's residual functional capacity.  The medical records therefore substantially support the ALJ's finding that plaintiff can do light work with the limitations stated in the ALJ's opinion.

Accordingly, substantial evidence supports the ALJ's finding that Julian does not have additional severe impairments or pain that, combined with her severe impairments, is disabling.  This assignment of error lacks merit.

2.    *The ALJ did not err by failing to consider plaintiff's depression.*

Plaintiff argues that the ALJ erred by failing to consider her depression.  However, as plaintiff herself testified, she never sought medical treatment for depression.

As previously discussed, a claimant's own reports of her symptoms are insufficient to establish a medical impairment.  Subjective complaints like these must be corroborated, at least in part, by objective medical evidence.  20 C.F.R. §§ 404.1528(a),

416.928(a), 404.1529(a), 416.929(a); <u>Palomo</u>, 154 Fed. Appx. at 430; <u>Ukolov</u>, 420 F.3d at 1005-06; <u>Craig</u>, 76 F.3d at 592; <u>Houston</u>, 895 F.2d at 1016.  The Fifth Circuit has specifically held that a plaintiff's "failure to seek treatment for depression is an indication of nondisability." <u>Doss</u>, 2005 WL 1463178, at *1 (citing <u>Villa</u>, 895 F.2d at 1024).

Because Julian's self-described depression is not supported by any medical evidence, this assignment of error lacks merit.

> 3.      *The ALJ did not err by failing to find that plaintiff is disabled so that she cannot perform her past relevant work or work existing in significant numbers in the national economy.*

Julian contends first that the ALJ erred in finding that she could perform light work because Dr. Mathai noted plaintiff's self-reported ability to sit for 90 minutes and stand for 60 minutes without problems (Tr. 95), but the ALJ found that plaintiff could sit, stand and/or walk for 6 hours out of an 8-hour day.  She also argues that she cannot sit and stand alternately, but cites no evidence to support that statement.

Substantial evidence supports the ALJ's finding.  He accepted Dr. Mathai's opinion in her Medical Source Statement, rather than plaintiff's own report, that Julian's ability to sit, walk and stand were not affected.  (Tr. 98-99)  He also found that plaintiff's testimony about her limitations in these areas was not credible.  As previously discussed, the ALJ's credibility assessment is entitled to considerable deference and his explanation

of his reasons for finding Julian not entirely credible is all that is required.  Those criteria have been satisfied in this case.

Julian also argues that the ALJ should have accepted the vocational expert's testimony that plaintiff could not work at any job if her pain was so debilitating that she could not concentrate, focus and perform a job.  (Tr. 239). An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994).

In the instant case, the ALJ posed hypothetical questions to the vocational expert that incorporated all of the limitations suggested by Julian.  However, the vocational expert's testimony cited by plaintiff was based on a restriction that she suffers from such debilitating pain that she could not concentrate, focus and perform a job, which the ALJ did not find credible.  The ALJ was not required to incorporate such a restriction in her hypothetical or to accept it in her findings.  Carey v. Apfel, 230 F.3d 131, 143 (5th Cir. 2000).

Plaintiff next contends that she drops things with her left hand without warning, which could be unsafe for herself and others in a work environment.  The ALJ included such a possibility in one of her hypotheticals to the vocational expert, who testified that such a restriction would not prevent the individual from working as a retail sales clerk. (Tr. 236-38).

Finally, plaintiff argues that she has no training as a bookkeeping, accounting and auditing clerk.  This is irrelevant because the ALJ found that she could perform her past relevant work as a sales clerk and therefore did not go to the fifth step of determining whether there are other available jobs that plaintiff could perform.

<u>CONCLUSION</u>

The additional medical records plaintiff seeks to submit via motion cannot be granted as a matter of law.  Julian has not carried her burden to show that new evidence warrants a remand in this case.  Substantial evidence supports the ALJ's findings that plaintiff's only severe impairments are bilateral carpal tunnel syndrome, status post trauma to her left elbow and asthma and that she has the residual functional capacity to return to her past relevant work as a sales clerk with the restrictions noted in the ALJ's opinion.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion to add medical records be DENIED and that the complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  __8th__  day of December, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE